## JOSEPH BUFFUM *versus* LEVI GREEN and B. SNOW.

An insolvent debtor may give a preference to one creditor by paying his debt in full, to the exclusion of all other creditors, provided it be done with good faith.

It is not essential to the valid delivery of a deed, that the grantee be present— a delivery to a third person for his use is good, if he afterwards assent, and the thing granted shall be said to rest in him from the time of such delivery.

The liability of a grantee as a surety for the grantor, is a good consideration to support an absolute conveyance of land against a creditor of the grantor.

If a debtor convey land to his creditor in payment, and the creditor accept the same, it will operate as a payment to the extent of the value of the land, although there was no agreed price for the land.

THIS was a writ of entry, in which the demandant counted upon his own seizin of a tract of land in Westmoreland, in this county, and upon a disseizin by the tenant. The cause was tried here upon the general issue, at October term, 1828, and a verdict taken by consent for the demandant, subject to the opinion of the court upon the following case.

Both parties derived their titles from D. D. who was agreed to have been formerly lawfully seized of the demanded premises in fee simple.

The demandant, having sued out a writ in his own name against D. D. in which he declared upon a note dated May 12, 1824, for $200, caused the demanded premises to be attached by virtue thereof, on the 16th August, 1826, and having obtained an execution in that suit, caused it to be duly extended upon the same premises on the 19th April, 1827.

D. D. having resided for several years in said Westmoreland, and having become wholly insolvent, went to Belchertown, in Massachusetts, where, on the 15th June, 1826, he made a deed, which purported to be a conveyance of the demanded premises to the tenants in fee simple. It did not appear, that the grantees, or either of them were present when the deed was made, nor that there had been any previous agreement between the grantor and the grantees on the subject.

D. D. took the deed, and having put it in a trunk at Westmoreland, left this state, and has not since returned. But on the 25th July, 1826, he wrote a letter, dated at Albany, to N. D. informing him where the deed might be found, and giving this direction; "be sure to let the deed be delivered and put on record before the title is snatched away by less deserving creditors." The deed was found in the trunk at Westmoreland, and on the 15th August, 1826, delivered to a son of Levi Green, who caused it to be recorded in the registry of deeds on the same day. Green was not at home when the deed was

delivered to his son, and sent to be recorded, but returned soon afterwards, and being informed what had been done, said that the deed was on record in season, and in the morning of the 16th August, 1826, took the deed into his custody, and in the course of a day or two afterwards took possession of the land.

It did not appear, that Snow had any knowledge of the deed until the 20th August, 1826. But soon after that time he employed an agent to take care of the land, and the agent and Green made a lease of it to one Tuel on the 1st September, 1826.

It was admitted by the demandant, that the amount due from D. D. to Green and Snow, and the amount of debts for which they were liable as his sureties, exceeded, at the time the deed was executed, the value of the land.

There was found in the trunk at Westmoreland with the said deed, a bill of sale made by D. D. to Green and Snow, of a pew in the meeting house and some hay in the barn. This bill of sale was delivered to Green and Snow, but the hay and pew were attached by other creditors and never came to the possession of Green and Snow.

There was also found with said deed in the trunk a list of books, with directions to deliver them to another creditor as part security for his debt ; also a list of certain notes against D. D. which he wished to have sued and secured. Writs were made on those notes in pursuance of his instructions and property attached on the 15th August, 1826, without the knowledge of the creditors. The conveyances made as aforesaid, and the attachments covered all the estate both real and personal of D. D. which could be attached.

It also appeared, that Green, on the 16th August, 1826, sued out a writ against D. D. on one of his notes and caused the demanded premises to be attached, which suit is still pending.

10

It was admitted by the demandant, that D. D. made the said deed to Green and Snow from preference to secure their said debts. And it appeared that the said debts due from D. D. to Green and Snow were due to them severally, and not jointly.

*J. Parker*, for the demandant contended, that the deed of D. D. was not duly delivered to the tenants. It was not in Green's hands until the 16th August. The delivery of the instrument to his son, and the conveyance of it to the register's office, did not constitute a delivery to the tenants. A delivery to Green was not a delivery to Snow, because they were not partners, nor joint purchasers, nor joint creditors. Their interests were totally disconnected and several, and in what proportions they were to take is in no way ascertained, unless it be in proportion to the debts due to them respectively. Green was not the agent of Snow to receive the delivery, and a subsequent delivery to Snow and assent by him cannot make it good by relation, to the prejudice of an innocent creditor, who had attached the land.

But if the deed was well delivered, it cannot prevail against creditors, unless a full consideration was paid, or debts to the full amount discharged, as a ground for the conveyance. Here nothing was paid ; no debt was discharged in fact ; no sum was agreed to be paid, or discharged ; no price for the land was fixed ; no notes or sureties were given up. If it could be supposed, that the notes which Snow and Green held against D. D. might form a consideration for the deed, yet still their liabilities as sureties could not form a good consideration, and in that case the consideration would be inadequate.

It is apparent that there was a secret trust or confidence, as there were to be after-proceedings to settle what should be allowed for the land. The conveyance appears upon the face of the deed to have been absolute ; but it was not in fact so. The grantees hold the land in trust until it shall be settled whether it is to go in full

discharge of the debts or in part payment.  The suit brought by Green on one of his notes is decisive proof, that he did not consider that note discharged by the deed. Indeed no one of the notes is discharged, as the deed acknowledges the receipt of the consideration, and D. D. is estopped thereby to say, that those demands, or any part of them, are discharged by the deed, there being no agreement, that they should be so.  Then all the pretended consideration fails.

*Woodbury*, on the same side argued, that about one third of the supposed consideration for this conveyance having been a mere liability by the grantees as sureties for the grantor, the other two thirds was not alone an adequate consideration.  On what principle could that one third be a valid consideration for an absolute conveyance against the creditors of the grantor ?

Nothing had been paid—nothing might ever be paid by the grantees.  A mere liability could only be a consideration for a mortgage.  The authorities cited seem to be good law on this point.  2 Greenl. 88 ; 3 Dyer, 295, *a*.  Had the grantees, before the deed was delivered, voluntarily paid the debts, or agreed to pay them at all events, and discharge the grantor, either of these might have furnished a good consideration.  But the case shows that all their payments were after the delivery of the deed, and that there was no agreement on the subject.

If the whole supposed consideration had been an absolute and direct debt to a larger amount than the value of the land, the transaction might still be fraudulent, if there was any secret trust, or if the debt was not discharged by the land.  In this case, every circumstance, which usually attends and indicates fraud, existed.  If the transaction was fraudulent in law, nothing could attend it, which is not found here.  Possession after the sale could not have existed, because the grantor absconded, and the selection of grantees who were creditors was nescessary to cover the fraud.  The cover would be ef-

fectual, if no part of the debt was discharged, or agreed to be discharged. There would be a debt, embarrassment, absconding, perfect secrecy in the transaction, a conveyance of all other property, which could be reached by process, no money paid, no discharges, no notes given up, or agreed to be given up. All these existed here. And further, one of the very notes now set up as paid by the land, was subsequently put in suit.

The secret trust is manifest. Had there been no such trust, the conveyance would have been a mortgage, or the notes would have been given up or discharged when the deed was delivered.

Every possible door to fraud is thus left open. The price of the land to be any thing or nothing. The time when it is to be fixed, six months, six years, or never. The mode of fixing undetermined, whether by themselves or referees, or sale by auction, or by a jury. Nor will it answer to fix it afterwards, in any of these ways. No court can make a contract for the parties, and thus convert a fraudulent contract into a fair sale.

With respect to the adequacy of the consideration, we are not to look to the value of the land, but the agreed value, the *agregatio mentium.* It is just as fraudulent for a debtor to sell a farm to a creditor for $500, which is worth $1000, as to sell it to one who is not a creditor for that sum. And it makes the case neither more nor less fraudulent, if the debtor owes the creditor beyond the real value of the land.

Here the price was agreed, or it was not. If it was not, the court cannot make a price for them afterwards ; and the parties cannot afterwards adopt a mode to fix it, not agreed upon at the time. If they can, any fraudulent sale may be cloaked.

No case can be found, where a deed has been held to be valid against creditors, unless there was an express contract as to the price of the land, previous to any attachment. Until there is such a contract, the sale is inchoate and incomplete.

In assignments there is always a provision in the instrument, that the goods or property shall be sold and turned into money, or the assignee takes them at a fixed price ; and the debts to be paid are specified. Otherwise every avenue to fraud would be left open ; and the claims of a creditor, when the assignment should be made to him, might still be enforced in whole or in part, as his caprice or pleasure might prescribe. 5 Mass. Rep. 48, *Hatch* v. *Smith, et a.* ; 12 ditto, 464, *Harrison* v. *The Trustees of Phillip's Academy* ; 6 ditto, 343 ; 5 ditto, 154 ; 5 Johns. 344.

*Handerson*, for the tenants. If one sell his land to defraud his creditors, yet the title of his grantee is good, if he be a *bona fide* purchaser for a valuable consideration without notice of such design. 14 Mass. Rep. 247.

A debtor in insolvent circumstances may *bona fide* give a preference to one creditor to the exclusion of others. And such preference is valid. He may even assign all his effects for the benefit of particular creditors, to the exclusion of others. 6 Mass. Rep. 342 ; 5 Johns. 412 ; 14 Johns. 458 ; 5 Mass. Rep. 49 ; 15 Johns. 571 ; 15 Mass. Rep. 74 ; 17 ditto, 556 ; 5 D. & E. 235 ; 8 ditto, 529 ; 1 Binn. Rep. 514.

A deed takes effect from its delivery. 2 Bl. Com. 304, 307 ; Co. Litt. 46, *b* ; Shep. Touch. 55, 58, 72 ; 8 Mass. Rep. 239 ; 9 ditto, 310 ; 2 Johns. 234 ; 4 ditto, 233. The delivery of a deed may be by words, or by acts without words. And the delivery may be either to the grantee, or to a third person who has no special authority, for the use of the grantee. 12 Johns. 536 ; Cowper's Rep. 204 ; Shep. Touch. 57, 58 ; 1 N. H. Rep. 357.

It is not essential to the valid delivery of a deed, that the grantee be present, and that it be made to and accepted by, him personally. A delivery at the register's office or any where else, in the absence of the grantor is good if he afterwards assent and take the deed. 12 Mass. Rep. 460 ; 17 ditto, 220 ; 9 ditto, 310 ; 1 N. H. Rep. 357 ; Shep. Touch. 58 ; 12 Johns. 536.

Every man is presumed to assent to a grant, made for his benefit. 1 Binn. 518.

All such acts as give estates directly, or by way of use, are good at first, and the thing granted when the deed of grant is delivered to the grantee's use, shall vest in the grantee before he has notice of the grant, or agree to accept of the thing granted ; so, that if lands be granted immediately by feoffment, gift, &c. the things granted shall be said to be in the grantee, and the grant good before notice or agreement, until disagreement. Shep. Touch. 285 ; 6 Mass. Rep. 24 ; 2 Ventris, 198 ; 1 Shower, 308 ; 1 Binn. 502—503, and 518—520.

The delivery of the deed to Green and the acceptance by him enures to the benefit of Snow, and is a good delivery to vest the title in him. If a feoffment be made to A and B by deed, and livery is made to A in the absence of B, in the name of both, the livery is good to pass the estate to both. A difference is taken between two attornies, who have but a naked authority and two grantees, who have the interest. Co. Litt. 49, b.

The cases above cited demonstrate, that the deed in this case took effect the moment it was delivered to Green's son.

But it is said, that, although the deed might have been well delivered and accepted by the grantees, the conveyance is fradulent as regards the creditors of D. D. ; that no price was fixed for the land, the notes held by Green and Snow were not cancelled ; that notwithstanding the conveyance, one of the notes has been sued, and all the other demands may be sued and collected of D. D. and thus, it is argued, all the supposed consideration for the conveyance fails. The answer to these objections is very obvious. It is true that a suit was commenced by Green, after he accepted the deed. The fact was, that the land was not sufficient to pay the amount due to Green and Snow, and the amount for which they were liable by a considerable sum, and surely if they accepted

the land in payment, so far as it would go, Green had a good right to bring a suit and recover the balance due to him. It is also true, that no price was fixed for the land, and that the notes were not cancelled. But the moment they accepted the deed, the legal effect was payment of the notes and other demands they held against D. D. to the extent of the value of the land conveyed.

But, it is said, the liabilities of Green and Snow as sureties could not form a good consideration. This is not so. When they accepted the title to the land, they thereby changed their original character and relation to D. D. Instead of sureties, they became principals. Having received the land for that purpose, it was a fund in their hands for the payment of those debts, and by accepting this fund, they assumed the payment of the debts, and if D. D. shall be hereafter compelled to pay them, he will have his remedy against Green and Snow.

It is said, here is a secret trust. How so? Was any interest reserved to D. D.? If the land had been of greater value than the amount Green and Snow were entitled to receive, there would have been a trust. But the fact was not so. The land was not sufficient to afford them a full indemnity. There could then, be no trust.

There is in the case neither fraud in fact, nor in law. A transaction like this has no tendency to defraud creditors. It was no more, nor less, than paying the debts due to Green and Snow in part, and is as free from fraud as if D. D. and Green and Snow had agreed upon the value of the land, given up the notes to the amount, and D. D. had delivered the deed with his own hand to the grantees. The effect upon the creditors would have been precisely the same in the one case as in the other.

The opinion of the court was delivered by RICHARDSON, C. J.

It is very clear, that an insolvent debtor may give a preference to one creditor by paying his debt in full,

to the exclusion of all the rest of the creditors, provided it be done with good faith. Indeed, it would be strange, if this could not be lawfully done in this state, where a creditor may by attaching all the property of his debtor secure the payment of his debt to the exclusion of all the other creditors. The cases, to which we have been referred by the counsel of the tenants, are directly in point, and we do not understand that the principle is contested in this case.

But several exceptions have been taken to the title, upon which the tenants rely.

In the first place it is contended, that there was no delivery of the deed to the tenants, previous to the time when the land was attached by virtue of the demandant's writ. This objection, if well founded in fact, must prevail. But the case states, that the deed was delivered to a third person for the use of the grantees, and was actually in the hands of one of the grantees, before the attachment was made ; and there are many adjudged cases, which clearly show, that the delivery to the third person was a valid delivery. 1 Johns. Ch. Rep. 254, *Souverbye* v. *Arden.* There is then no foundation, on which this exception can rest.

It is also contended, that there was no consideration which can support the conveyance against creditors. It is not disputed that there were debts due from the grantor to the grantees, or that the conveyance was made in payment of those debts. But it is objected, that no price was fixed for the land, and no agreement was made as to what debts should be discharged by the conveyance. We do not, however, see any legal foundation for this objection. If the land was conveyed for the purpose of paying the debts due to the grantees so far as it would go, and accepted by them thus in payment, it will in law operate as a payment to the extent of its value. And we are not aware of any rule of law, requiring, that the particular debts to be discharged shall be designated,

when payment is made in land, any more than when payment is made in money. But it is said that, although the debts due to the grantees might be a good consideration, their liabilities as sureties could not be so. The law is, however, otherwise. It is well settled, that such liabilities are a good consideration for a conveyance. 6 Mass. Rep. 342, *Stevens* v. *Bell* ; 1 Burr. 474 ; 2 Johns. Ch. Rep. 306. And the grantees are as well entitled to hold the land conveyed to them, to enable them to pay the debts of the grantor, for which they were liable as they would have been to hold money, had it been paid to them for that purpose. We have no doubt, that there was a good consideration for the conveyance equal to the full value of the land.

It is further objected, that there was a secret trust or confidence in the conveyance, and this is attempted to be shown from several circumstances. In the first place, it is said, that the contract was not complete, that there were to be further proceedings to settle the value of the land, and whether it should go in part satisfaction, or in full discharge of the debts, and that the land was held in trust, until these matters were settled.

But it does not seem to us that this affords any ground even to suspect that there was a secret trust which can invalidate the conveyance. The grantor sent the deed to the grantees for the purpose of paying the debts due to them, and the debts for which they were liable, and they accepted it accordingly. This, in point of law, constituted a payment to the extent of the value of the land. Now a trust, which invalidates a conveyance as against creditors, is the reservation of some benefit to the grantor. 3 N. H. Rep. 424. But what reservation was there in this case ? There is not only no evidence of any in this case, but it is highly improbable, under the circumstances, that there was any. There was no previous consultation between the parties. The grantor had absconded before the deed was offered to the grantees.

11

<div style="float:left">Buffum<br>
<i>v.</i><br>
Green, et a.</div>

The deed was recorded before either of the grantees had notice of the conveyance. The land was not of sufficient value to pay the debts due to the grantees, and the debts for which they were liable. It is in the highest degree improbable, that they would have assented to any secret reservation had it been proposed to them, and there is nothing in the case that renders it at all probable that any proposition of the kind was ever made to them.

In the next place it is said, that the receipt of the consideration is acknowledged in the deed, and that the grantor is thereby estopped to say that the debts due to the grantees are paid by the conveyance, there being no agreement for that purpose, and that so there is a secret trust as to the whole value of the land. But we are not aware of any such estoppel. The grantor would not be permitted, for the purpose of defeating the operation of the deed, to show that there was not a consideration of money paid. But it has been settled in this court, that for any other purpose he may show the true consideration.

Some other circumstances have been mentioned by counsel, which in some cases attend a secret trust ; but we see nothing in this case, which indicates in the slightest degree any thing of the kind.

The verdict must therefore be set aside, and

<div style="text-align:right"><i>A new trial granted.</i></div>